UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL ACTION NO:

_____

_____ )
JOSEPH MORRISON,                         )
                                         )        **JURY TRIAL**
                                         )        **DEMANDED**
                    Plaintiff            )
                                         )
          v.                             )
                                         )
                                         )
HEALTHFIRST, INC.,                       )
HF MANAGEMENT SERVICES LLC,              )
KENNETH SCHWARTZ AND                     )
CHRISTER JOHNSON                         )
                                         )
                    Defendants           )
_____ )

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      The plaintiff, Joseph Morrison ("Mr. Morrison" or "Plaintiff"), is a male resident of the State of New York residing at 240 East 76th St., Apt. 12K, New York, NY 11203.

2.      Defendant HealthFirst, Inc. ("HealthFirst") is a domestic corporation incorporated in New York with a principal office at 100 Church Street, New York, NY 10007.

3.      Defendant HF Management Services LLC ("HF Management") (HealthFirst and HF Management collectively the "Company") is a domestic limited liability company incorporated in New York with a principal office at 100 Church Street, New York, NY 10007.

4.      Defendant, Kenneth Schwartz ("Schwartz") is an adult male who, upon information and belief, resides in New York.  Schwartz is named in both his individual and official capacities.

5.      Defendant, Christer Johnson ("Johnson") (the Company, Schwartz, and Johnson collectively "Defendants") is an adult male who, upon information and belief, works in New York.  Johnson is named in both his individual and official capacities.

## JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Morrison has brought claims pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq*. The court may exercise supplemental jurisdiction over Mr. Morrison's state and city law claims. 28 U.S.C. §1367.

7.      Venue is appropriate in the Southern District of New York as Defendants' acts and omissions giving rise to the claims in this Complaint occurred in the Southern District of New York.  Indeed, Mr. Morrison worked for the Company and was fired by the Company within the Southern District of New York.  The Company, including each of HealthFirst and HF Management, are residents of New York as they are incorporated in New York and have their principal office in the Southern District of New York.

8.      This court has jurisdiction over the Defendant HealthFirst because HealthFirst is a resident of New York because it is incorporated in New York and because its principal place of business is in New York.  Additionally, HealthFirst purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Morrison) in New York. Indeed, the Plaintiff was employed by HealthFirst in the State of New York, was managed by HealthFirst in the State of New York, and was terminated by HealthFirst in the State of New York.

9.      This court has jurisdiction over the Defendant HF Management because HF Management is a resident of New York because it is incorporated in New York and because its principal business is in New York.  Additionally, HF Management purposefully availed itself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Morrison) in New York. Indeed, the Plaintiff was employed by HF Management in the State of New York, was managed by HF Management in the State of New York and was terminated by HF Management in the State of New York.

10.     This court has jurisdiction over the Defendant Schwartz because, upon information and belief, Schwartz is a resident of New York and because he purposefully availed himself of New York law.  Indeed, the Plaintiff was managed by Schwartz in the State of New York and was terminated by Schwartz in the State of New York.

11.     This court has jurisdiction over the Defendant Johnson because he purposefully availed himself of New York law.  Indeed, the Plaintiff was managed by Johnson in the State of New York and was terminated by Johnson in the State of New York.

## STATEMENT OF FACTS

12.     Mr. Morrison is a fifty-nine year old man (born in 1963).

13.     In or around 2015, Mr. Morrison began working for Defendants and was initially classified by the Company as a consultant.

14.     In or around June 2017, Mr. Morrison was hired by the Company as a full-time employee with the title of Director of Analytics.

15.     Mr. Morrison was based in the Company's corporate office at 100 Church Street in Manhattan.

16.     HealthFirst and HF Management (both collectively and each individually) exercised control over the day-to-day aspects of Mr. Morrison's job.

17.     For example, although Mr. Morrison was paid by HF Management, HealthFirst provided all the employment related policies (including the handbook), provided Mr. Morrison with his email address, and (upon information and belief) controlled the facilities at which Mr. Morrison worked and controlled Mr. Morrison's employment related documents.

18.     As such, at all relevant times, Mr. Morrison was jointly employed by both HealthFirst and HF Management.

19.     At all relevant times, the Company (including each of HealthFirst and HF Management) employed 20 or more employees for 20 or more calendar weeks within the last 12 months.

20.     As such, the Company (including each of HealthFirst and HF Management) is an employer under the Age Discrimination in Employment Act ("ADEA"), the New York City Human Rights Law, and the New York State Human Rights Law.

21.     At all relevant times, Mr. Morrison was a qualified employee, and his job performance was satisfactory.

22.     After being hired, Mr. Morrison disclosed his age to the Company as part of the onboarding process.

23.     When Mr. Morrison began his employment with the Company, he reported to Steve Prewit ("Prewitt"), Vice President of Clinical Analytics.

24.     Prewitt was ultimately promoted to Chief Analytics Officer and continued to supervise Mr. Morrison in that role.

25.     Upon information and belief, Prewitt is ten to fifteen years younger than Mr.

Morrison.

26.     Of the other employees at the Vice President or Director level, Mr. Morrison was

the oldest.

27.     Upon information and belief, Dave Zeh ("Zeh"), Vice President of Closed

Analytics, was ten to fifteen years younger than Mr. Morrison.

28.     Upon information and belief, Jennifer Zbell ("Zbell"), Vice President of

Clinical Analytics, was ten to fifteen years younger than Mr. Morrison.

29.     Upon information and belief, Aalap Dalal ("Dalal"), Director of Claims, was

twenty to twenty-five years younger than Mr. Morrison.

30.     Finally, upon information and belief, Kenneth Schwartz ("Schwartz"), Vice

President of Analytics, Innovation, and Value, is younger than Mr. Morrison.

31.     Shortly after beginning with the Company, Steve Black ("Black"), Chief

Operating Officer, began calling Mr. Morrison the "new old guy."

32.     Upon information and belief, Black is around five years younger than Mr.

Morrison.

33.     Despite Mr. Morrison's protests to stop using this phrase, Black called Mr.

Morrison "the new old guy" repeatedly throughout Mr. Morrison's employment with the

Company, including in front of large groups of other employees.

34.     Black also commented that Mr. Morrison was an "older white guy" who knew

"historic" technology.

35.     Additionally, although Mr. Morrison was told in performance reviews that his

performance exceeded expectations, after management learned Mr. Morrison's age, he began to

perceive in meetings that his opinions were dismissed, and Mr. Morrison was treated in an

increasingly condescending manner.

36.     For example, it was typical in meetings for one of the younger executives to simply say, "opinion noted," after Mr. Morrison had spoken and to dismiss his efforts to contribute to group discussions.

37.     Younger employees were not treated in this condescending manner.

38.     Additionally, it was common for colleagues to refer to Mr. Morrison as "the old guy," "a grumpy old man," and/or "a dead man walking."

39.     This was particularly true with Schwartz, who seemed eager to make it clear that Mr. Morrison was the oldest member of the team.

40.     Indeed, Schwartz and other colleagues would ask Mr. Morrison repeatedly why he still work at all and they would suggest that Mr. Morrison should retire.

41.     Mr. Morrison was also commonly referred to as "Larry David" by his colleagues.

42.     Larry David, the well-known celebrity, is seventy-four years old. He is balding with white hair and has the general appearance of an old man.

43.     Additionally, the well-known "Larry David" character from the popular television show, *Curb Your Enthusiasm*, is depicted as someone who is old, outdated, and has ignorance for social conventions.

44.     When Mr. Morrison was referred to as "Larry David," it was clear that this was a denigrating reference to his age and to age-related differences between younger colleagues and Mr. Morrison.

45.     Mr. Morrison's colleagues made these harassing comments about his age in front of Prewitt, and Prewitt did nothing to stop these comments (including calling Mr. Morrison "Larry David," "the old guy," "grumpy old man," and "dead man walking"), despite it

being clear that this harassing treatment made Mr. Morrison uncomfortable.

46.     Mr. Morrison was also left out of manager team building and ideation sessions to which the younger employees on the management team were invited.

47.     In or around August 2019, Schartz became Mr. Morrison's direct supervisor, and was promoted over Mr. Morrison.

48.     Notably, Mr. Morrison was as or more qualified for the promotion than Schwartz.

49.     It was obvious that Mr. Morrison was passed over for this promotion due to his age.

50.     After Schwartz became Mr. Morrison's supervisor the discriminatory comments and behavior based on Mr. Morrison's age intensified.

51.     Mr. Morrison was told by one or more colleagues that Schwartz had commented to them that Mr. Morrison was excluded from the team building meetings and ideation sessions because he was hoping Mr. Morrison would "wind down."

52.     Hoping that Mr. Morrison would "wind down" is a clear reference to Mr. Morrison's age and/or the possibility of Mr. Morrison retiring.

53.     Additionally, while the "Larry David, "old man," "dead man walking," and other discriminatory comments had been commonplace with Prewitt as Mr. Morrison's direct supervisor, Schwartz and other colleagues made these harassing comments even more frequently and brazenly once Schwartz became Mr. Morrison's direct supervisor.

54.     In fact, Schwartz seemed to encourage this discrimination and would often make the first discriminatory and harassing statement directed at Mr. Morrison in a meeting, thus inviting other co-workers to participate in this discrimination and harassment.

55.     In or around the beginning of 2020, Mr. Morrison had his annual performance review with Schwartz.

56.     In this meeting, Mr. Morrison asked Schwartz why he (Mr. Morrison) did not get the same supplemental bonus as the younger employees.

57.     Schwartz told Mr. Morrison that "a guy your [Mr. Morrison's] age" had enough money, and Schwartz further stated that the Company wanted to use the money Mr. Morrison would have received as a bonus to give to young interns as a retention bonus to incentivize them to stay.

58.     As was typical, in or around the summer of 2020, the Company had summer interns, nearly all of whom were extremely young.

59.     Mr. Morrison was not given the opportunity to request an intern, and when he asked about this, Schwartz indicated that, at Mr. Morrison's age, Mr. Morrison should not have enough responsibility to require an intern.

60.     Mr. Schwartz clearly indicated through his words and attitude that he viewed Mr. Morrison as being in a process of winding down at the Company in light of his age.

61.     This explanation for not allowing Mr. Morrison to have interns was clearly discriminatory based on his age.

62.     In or around November 2020, Christer Johnson ("Johnson"), Chief Analytics Officer, was hired and became Mr. Morrison's supervisor in addition to Schwartz.

63.     Notably, Mr. Morrison was qualified for the role of Chief Analytics Officer and had expressed interest in the role.

64.     Again, the Company clearly passed over Mr. Morrison for the role and instead hired the less qualified and younger Johnson from outside the organization.

65.    Upon information and belief, Johnson is at least five to ten years younger than Mr. Morrison.

66.    When Johnson took over as a supervisor of Mr. Morrison, the negative targeting of Mr. Morrison related to his age increased further.

67.    Indeed, Johnson frequently made age-related comments, including that he wanted the Company to be "more upstart," "hot," "younger," and with "new blood."

68.    Beyond these comments, Johnson began making changes to Mr. Morrison's role by removing or reducing responsibilities that he (Mr. Morrison) had previously held.

69.    It appeared that Johnson was sidelining Mr. Morrison for age-related reasons.

70.    One such task that Johnson removed was Mr. Morrison's position on the panel that hires Data Scientists.

71.    Johnson also told Mr. Morrison to consider not coming to – or at least avoid commenting in – meetings that were based in Mr. Morrison's most knowledgeable subject areas because he wanted Mr. Morrison to keep his "antiquated opinions" to himself.

72.    Indeed, in or around the beginning of 2021, Johnson told Mr. Morrison that he did not want Mr. Morrison to "influence young people with old ideas."

73.    Johnson also told Mr. Morrison that he wanted to be known as a leader who appreciated very young employees (who he described as fresh out of school) as being cutting edge and valuable and who could make them appear this way to clients.  Johnson stated that he did not care if the work of these younger employees was correct, he only cared whether outsiders perceived them as valuable due to their youthful energy and being perceived as cutting edge.

74.     Thus, Johnson explicitly expressed that performance expectations were dependent on age, since he made clear he held younger employees to a lower standard than older employees.

75.     On or around February 11, 2021, Mr. Morrison had his first "appraisal" with Schwartz since Johnson was hired.

76.     In this meeting, Schwartz referred to comments Johnson had made to him.

77.     Indeed, Schwartz said Johnson told him that Mr. Morrison's "age is showing" and that this was a "new regime year."

78.     Schwartz further told Mr. Morrison that he would need to be more like the "younger people" and claimed that Johnson felt the same way.

79.     It was clear that Johnson and Schwartz were targeting Mr. Morrison for negative treatment based on his age.

80.     Mr. Morrison raised protected concerns to Schwartz that he was concerned that he was being discriminated against for his age.

81.     Indeed, based on Mr. Morrison's discrimination concerns, Mr. Morrison set up a teleconference with Human Resources.

82.     In or around February 2021, Mr. Morrison spoke with Ellen Griffith ("Griffith"), Human Resources Manager, and raised protected concerns that he was being discriminated against based on his age.

83.     Mr. Morrison told Griffith that his age had been referenced in a performance review conversation.

84.     Further, Mr. Morrison recounted to Griffith a number of discriminatory age-related comments that Schwartz had made to him and explained that he (Mr. Morrison) had been told Johnson felt the same way.

85.     Griffith dismissed Mr. Morrison's very serious concerns by flippantly commenting that "everyone says the wrong thing sometimes."

86.     Griffith then made her own discriminatory statements, based on Mr. Morrison's age, including by telling Mr. Morrison that he should consider wearing more "hip" clothes to try to fit in with the "energetic younger people."

87.     The Company did nothing to address Mr. Morrison's age-related discrimination concerns, and the harassing and discriminatory treatment continued.

88.     On or around March 26, 2021, upon information and belief, Johnson asked John Lombardi ("Lombardi"), Project Management, Yogesh Sharma ("Sharma"), Project Management, and Schwartz if Bilal Bashir ("Bashir"), Senior Data Wrangler, could perform the tasks of Mr. Morrison's job so the Company could "get rid of [Mr. Morrison]" and slant employee demographics to a younger average age.

89.     Several of these individuals recounted this conversation to Mr. Morrison after it occurred.

90.     Upon information and belief, Lombardi, Sharma, and Bashir are all twenty to twenty-five years younger than Mr. Morrison.

91.     Following this discussion, some of Mr. Morrison's tasks were given to Bashir, and upon information and belief, Johnson began meeting with Bashir and encouraged him to take over the essential functions of Mr. Morrison's position.

92.     Additionally, Johnson openly encouraged Lombardi and Sharma to complete tasks redundant to Mr. Morrison's.

93.     Work that was aligned to Mr. Morrison's job description was also given to Sule Baptiste ("Baptiste"), Director of Data Science.

94.     Upon information and belief, Baptiste is twenty-five to thirty years younger than Mr. Morrison.

95.     On or around August 6, 2021, Mr. Morrison met with G.T. Sweeney, Chief Technology Officer ("CTO").

96.     Upon information and belief, Sweeney is at least five years younger than Mr. Morrison.

97.     Mr. Morrison raised concerns about the age-related harassment he was being subjected to, including the use of ageist nicknames and comments on a nearly daily basis.

98.     Mr. Morrison also raised concerns to Sweeney that inexperienced younger people were being hired over more qualified older candidates, which was clearly due to a push to hire younger personnel.

99.     Mr. Morrison additionally raised concerns that his tasks were being reassigned to younger employees.

100.     Mr. Morrison suggested, as a possible solution, that he be transferred to a different department so that he would no longer have to report to Schwartz and Johnson (who continuously made age related comments to him).

101.     Sweeney, while refusing to take any action to address the underlying discrimination, seemed open to the transfer.

102.     In or around September 2021, Mr. Morrison began suffering from heart palpitations.

103.     Mr. Morrison's heart palpitations are an impairment that substantially limits one or more of his major life activities, including but not limited to, breathing and moving when having a flare up.  Additionally, it substantially impairs one or more of his major bodily

functions including, but not limited to, his cardiovascular functions. As such, Mr. Morrison is disabled under New York State law and New York City law.

104.    Mr. Morrison's doctor recommended he have a chest MRI.

105.    Mr. Morrison disclosed his disability to Johnson and Schwartz and asked for a day off to have the chest MRI.

106.    The accommodation was purportedly granted.

107.    However, after giving Mr. Morrison permission to take time off, Johnson and Schwartz scheduled a number of important meetings on the day Mr. Morrison was on leave, which thus forced Mr. Morrison to miss these meetings and for the meetings to occur without Mr. Morrison.

108.    The scheduling of the meetings was clearly designed to exclude Mr. Morrison due to this age, disability, and/or engagement in protected activities.

109.    On or around October 28, 2021, Mr. Morrison received a meeting request from Johnson. In this meeting, Johnson praised Mr. Morrison for his performance and the progress that Mr. Morrison was making with the Company.

110.    Specifically, Johnson told Mr. Morrison that in his one-on-one meetings with staff members, it was apparent that Mr. Morrison's team had higher morale and engagement than the rest of the department. He also told Mr. Morrison that Mr. Morrison's team best understood their work and the Company's overall strategy.

111.    After the meeting, Mr. Morrison reached out again to Sweeney to ask for the transfer they had discussed back in August.  In doing so, Mr. Morrison made clear that he was following up about his request for a transfer because the age-related harassment had continued.

112.    Later that day, Johnson scheduled a second meeting with Mr. Morrison.

113.    In that meeting, Johnson and Griffith inexplicably told Mr. Morrison that he was terminated, supposedly for creating an allegedly toxic environment and for allegedly failing to follow directions.

114.    It was clear that the supposedly "toxic environment" was a reference to the fact that Mr. Morrison had continued to raise protected concerns about his discriminatory treatment.

115.    Thus, Mr. Morrison was involuntarily terminated on October 28, 2021.

116.    Upon information and belief, Schwartz was involved in the decision to terminate Mr. Morrison.

117.    Notably, Mr. Morrison had never been reprimanded or disciplined about not following directions or about the work environment he was allegedly creating.

118.    Indeed, the Company clearly appeared to be targeting Mr. Morrison due to his age and/or for raising protected concerns about age discrimination.

119.    Upon information and belief, Johnson told employees following Mr. Morrison termination that Mr. Morrison had "worked past [his] usefulness."

120.    Notably, Mr. Morrison's most recent performance evaluation was positive and did not indicate that he was failing to meet any of his job responsibilities.

121.    Additionally, the Company has a progressive disciplinary policy that includes verbal and written warnings, which was not followed in Mr. Morrison's situation.

122.    For instance, Eddie Lee ("Lee"), Senior Manager, was previously reprimanded for insubordination, and he was spoken with, but he was not terminated.

123.    Upon information and belief, Lee is at least twenty years younger than Mr. Morrison.

124.    Upon information and belief, Mr. Morrison was replaced by a younger employee.

125.    Mr. Morrison's termination took place in New York City (Manhattan), and, upon information and belief, Johnson, Griffith, and Schwartz were in New York City (within the state of New York) when they made the decision to fire Mr. Morrison as well as when they actually terminated Mr. Morrison.

126.    On or around July 25, 2022, Mr. Morrison timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

127.    On November 29, 2022, Mr. Morrison requested an administrative closure from the NYCCHR.

128.    The NYCCHR issued an administrative closure on January 5, 2023.

129.    On February 7, 2023, the EEOC issued Mr. Morrison a Right to Sue letter.

130.    This lawsuit is timely filed.

## COUNT I

**(Age Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (HealthFirst, HF Management, Schwartz, and Johnson)**

131.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

132.    The Company (including each of HealthFirst and HF Management) is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

133.    At all relevant times, Mr. Morrison was over 40 years old.

134.    The Defendants, by and through its agents harassed and discriminated against Mr. Morrison with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Morrison's age.

135.    More specifically, the Defendants subjected Mr. Morrison to adverse actions because of his age, including, but not limited to, subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison with a bonus his younger colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

136.    Upon information and belief, the Defendants replaced Mr. Morrison with a lesser or similarly qualified, younger employee.

137.    Schwartz discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYCHRL.

138.    Schwartz aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

139.    Johnson discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYCHRL.

140.    Johnson aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL

141.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

142.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

143.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT II**

**(Age Discrimination in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (HealthFirst, HF Management, Schwartz, and Johnson)**

144.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

145.    The Company (including each of HealthFirst and HF Management) was an employer as defined by state anti-discrimination laws, including the NYSHRL.

146.    The Defendants, by and through its agents harassed and discriminated against Mr. Morrison with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Morrison's age.

147.    More specifically, the Defendants subjected Mr. Morrison to adverse actions because of his age, including, but not limited to, by subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison with a bonus that his younger colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

148.    Upon information and belief, the Defendants replaced Mr. Morrison with a lesser or similarly qualified, younger employee.

149.    Schwartz discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYSHRL.

150.    Schwartz aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

151.    Johnson discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYSHRL.

152.    Johnson aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

153.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

154.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

155.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT III

**(Age Discrimination in Violation of the Age Discrimination in Employment Act)**
**Plaintiff v. The Company (HealthFirst and HF Management)**

156.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

157.    During all relevant times, the Company (including each of HealthFirst and HF Management) was an employer under the Age Discrimination in Employment Act, 29 U.S.C. §§

621, et seq. (hereinafter, "ADEA") because the Company employed 20 or more individuals for 20 or more calendar weeks during the relevant calendar years.

158.    The Company, by and through its agents harassed and discriminated against Mr. Morrison with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Morrison's age.

159.    More specifically, the Company subjected Mr. Morrison to adverse actions because of his age, including, but not limited to, by subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison with a bonus that his younger colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, and/or terminating Mr. Morrison's employment.

160.    Upon information and belief, the Company replaced Mr. Morrison with a lesser or similarly qualified, younger employee.

161.    The Company acted with willful and/or knowing indifference to the federally protected rights of Mr. Morrison.

162.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

163.    Mr. Morrison seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT IV

### (Disability Discrimination in Violation of the New York City

### Human Rights Law, Title 8 of the Administrative Code of the City of New York)

### Plaintiff v. All Defendants (HealthFirst, HF Management, Schwartz, and Johnson)

164.    Mr. Morrison incorporates all paragraphs above and below as if set forth fully

herein.

165.    The Company is an employer under the definition of Title 8 of The

Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it

employed four or more persons.

166.    Mr. Morrison suffered from heart palpitations which are an impairment that

substantially limits one or more of his major life activities, including but not limited to, breathing

and moving when having a flare up.  Additionally, it substantially impairs one or more of his

major bodily functions including, but not limited to, his cardiovascular functions. As such, Mr.

Morrison is disabled under the NYCHRL.

167.    At all relevant times, Mr. Morrison was a qualified employee and was capable of

performing the essential functions of his job with or without one or more reasonable

accommodations.

168.    Mr. Morrison disclosed his disabilities to the Company, Schwartz, and Johnson

(collectively "Defendants"); and/or the Defendants were aware of Mr. Morrison's disability;

and/or the Defendants regarded Mr. Morrison as disabled.

169. Mr. Morrison requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. For example, Mr. Morrison requested a day off to have a chest MRI related to his disability.

170. The Defendants, by and through their agents harassed and discriminated against Mr. Morrison with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Morrison's disability and/or because he is an older individual with a disability.

171. More specifically, the Defendants subjected Mr. Morrison to adverse actions because of his disability and/or because he is an older individual with a disability, including, but not limited to, subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison with a bonus his younger/non-disabled colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

172. Upon information and belief, the Defendants replaced Mr. Morrison with a lesser or similarly qualified, non-disabled younger employee.

173. Schwartz discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYCHRL.

174. Schwartz aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

175.    Johnson discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYCHRL.

176.    Johnson aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL

177.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

178.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

179.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

## (Disability Discrimination in Violation of the New York State Human

## Rights Law, Executive Law Article 15, Section 296)

### Plaintiff v. All Defendants (HealthFirst, HF Management, Schwartz, and Johnson)

180.    Mr. Morrison incorporates all paragraphs above and below as if set forth fully herein.

181.    The Company (including each of HealthFirst and HF Management) was an employer as defined by state anti-discrimination laws, including the NYSHRL.

182.    Mr. Morrison suffered from heart palpitations which are an impairment that substantially limits one or more of his major life activities, including but not limited to, breathing and moving when having a flare up.  Additionally, it substantially impairs one or more of his major bodily functions including, but not limited to, his cardiovascular functions. As such, Mr. Morrison is disabled under the NYSHRL.

183.    At all relevant times, Mr. Morrison was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

184.    Mr. Morrison disclosed his disabilities to the Company, Schwartz, and Johnson (collectively "Defendants"); and/or the Defendants were aware of Mr. Morrison's disability; and/or the Defendants regarded Mr. Morrison as disabled.

185.    Mr. Morrison requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. For example, Mr. Morrison requested a day off to have a chest MRI related to his disability.

186.     The Defendants, by and through their agents harassed and discriminated against Mr. Morrison with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Morrison's disability and/or because he is an older individual with a disability.

187.     More specifically, the Defendants subjected Mr. Morrison to adverse actions because of his disability and/or because he is an older individual with a disability, including, but not limited to, subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison with a bonus his younger/non-disabled colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

188.     Upon information and belief, the Defendants replaced Mr. Morrison with a lesser or similarly qualified, non-disabled younger employee.

189.     Schwartz discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYSHRL.

190.     Schwartz aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

191.     Johnson discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYSHRL.

192.    Johnson aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL

193.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

194.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

195.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VI

**(Retaliation for Engaging in Protected Activity in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (HealthFirst, HF Management, Schwartz, and Johnson)**

196.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

197.    Mr. Morrison engaged in protected activity under the NYCHRL, including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age; (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Morrison's age; (iii) requesting and/or utilizing one or more reasonable accommodations; and/or (iv) opposing, expressing protected concerns, and/or engaging in other protected activity related to discriminatory actions proposed or taken by the Company against other employees based on age.

198.    Defendants discriminated against and/or retaliated against Mr. Morrison for engaging in activity protected under the NYCHRL, by subjecting Mr. Morrison to adverse actions, including subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison bonus his younger colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

199.    Schwartz discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYCHRL.

200.    Schwartz aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

201.    Johnson discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYCHRL.

202.    Johnson aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

203.    Defendants' have engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

204.    As a direct and proximate result of the Defendants' violations of the NYCHRL, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

205.    Mr. Morrison seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and cost.

**COUNT VII**

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (HealthFirst, HF Management, Schwartz, and Johnson)**

206.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

207.    Mr. Morrison engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Morrison's age; (iii) requesting and/or utilizing one or more reasonable accommodations; and/or (iv) opposing, expressing protected concerns, and/or engaging in other protected activity related to discriminatory actions proposed or taken by the Company against other employees based on age.

208.    Defendants discriminated against and/or retaliated against Mr. Morrison for engaging in activity protected under the NYSHRL, by subjecting Mr. Morrison to adverse actions, including, but not limited to, subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison a bonus his younger colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

209.    Schwartz discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYSHRL.

210.    Schwartz aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

211.    Johnson discharged, expelled, barred, and/or discriminated against Mr. Morrison in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Morrison under the NYSHRL.

212.    Johnson aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL

213.    Defendants' have engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

214.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

215.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),

damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Retaliation in Violation of the Age Discrimination in Employment Act)**

**Plaintiff v. The Company (HealthFirst and HF Management)**

216.   The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

217.   Mr. Morrison engaged in protected activity under the ADEA, including, but not limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Morrison's age; and/or (iii) opposing, expressing protected concerns, and/or engaging in other protected activity related to discriminatory actions proposed or taken by the Company against other employees based on age.

218.   The Company retaliated against Mr. Morrison for opposing, expressing protected concerns, and/or engaging in other protected activity related to one or more practices made unlawful by the ADEA, by subjecting Mr. Morrison to adverse actions, including, but not limited to, subjecting Mr. Morrison to a harassing and otherwise hostile work environment, calling Mr. Morrison harassing names, not providing Mr. Morrison a bonus his younger colleagues were given, excluding Mr. Morrison from team building meetings or ideations sessions, not providing Mr. Morrison with an intern, taking away Mr. Morrison's job responsibilities, not providing Mr. Morrison one or more promotions to which he was qualified for, and/or terminating Mr. Morrison's employment.

219.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Morrison's exercising of, or enjoyment of, one or more rights granted by the ADEA.

220.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Morrison.

221.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Morrison has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

222.    Mr. Morrison seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Joseph Morrison, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his reasonable attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

JOSEPH MORRISON

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:  February 7, 2023            By:            /s/Timothy J. Brock

Benjamin J. Wyatt (#5604590)
BWyatt@Wyattlegalservices.com

Timothy Brock (#5614151)
Tbrock@wyattlegalservices.com

Main Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207